NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | November 18, 2022 | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

John Vincent Saykanic, Esq.
Law Officers of John Vincent Saykanic
1135 Clifton Ave
Clifton, New Jersey 07013
*Counsel for Defendant Alan Grecco*

Anthony DiPietro, Esq.
Law Offices of Anthony DiPietro, P.C.
15 Chester Avenue
White Plains, New York 10601
*Counsel for Defendant Alan Grecco*

Vincent Daniel Romano, Esq.
*Assistant United States Attorney*
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
*Counsel for the Government*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

Re:   *United States v. Alan Grecco*
         Crim. No. 89–00250

Counsel:

Before this Court is Defendant Alan Grecco's ("Defendant") Motion for Reduction in Sentence to be re-sentenced for Compassionate Release and/or for release to home confinement pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E. 30-1.) This Court having considered the parties' submissions, and for the reasons discussed below, **GRANTS** Defendant's motion.

**DISCUSSION**

**A.**

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010), the recently-enacted First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). As such, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).

**B.**

On July 20, 1989, Defendant was charged along with seven co-defendants in a seven-count indictment ("Indictment") alleging his involvement in a criminal enterprise—a faction of the Genovese Family of La Cosa Nostra—in which its primary purpose "was to obtain money for its members and associates through the operation of two illegal businesses." (D.E. 30–1 at 10; D.E. 40 at 1; CV D.E. 56 at 1; *see generally* CV D.E. 44-9.)[2] The Indictment charged Defendant and

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

[2] "D.E." will be used to refer to docket entry filings in criminal case *United States v. Grecco*, Crim. No. 2:89-CR-00250-SDW-2. "CV D.E." refers to the docket entries in civil case *Grecco v. United States*, Civ. No. 2:97-CV-02098-

his seven co-defendants with conducting the affairs of the enterprise through a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (D.E. 30-1 at 10, 171–78; D.E. 40 at 2.) The Indictment further alleged that the enterprise used "fear and violence to eliminate competition" of rival gambling businesses, and "conducted and conspired in acts of murder and extortion to further the objectives of the enterprise." (D.E. 30-1 at 171–78; D.E. 40 at 1–2; *see generally* CV D.E. 44-9.)

Six of Defendant's co-defendants pled guilty and accepted plea agreements.[3] (D.E. 30-1 at 22–23.) Defendant and one co-defendant, Louis Gatto, Sr., ("Gatto") elected to proceed to a jury trial, which was commenced before the Honorable Harold A. Ackerman, U.S.D.J. (now deceased) on March 18, 1991.[4] (D.E. 30-1 at 11.) Defendant and Gatto proceeded to trial on a seven count Indictment[5] charging: RICO conspiracy (Count One); Substantive RICO Enterprise (Count Two); Sports gambling business (Count Three); Numbers gambling business (Count Four); Use of Interstate telephone facilities in aid of illegal gambling (Count Five); Interstate travel in aid of Racketeering (Count Six); and Interstate transportation of wagering records (Count Seven). (D.E. 30-1 at 10–11; D.E. 40 at 2.)

On June 20, 1991, a jury found Defendant guilty on all counts.[6] (D.E. 40 at 2; CV D.E. 56 at 2.) On November 11, 1991, Judge Ackerman sentenced Defendant to a term of 65 years of imprisonment.[7] (D.E. 30-1 at 11, 54–56; CV D.E. 56 at 2–3.) The Third Circuit Court of Appeals

---

CCC and "CV2 D.E." refers to the docket entries in civil case *Grecco v. United States*, Civ. No. 2:06-CV-00407-HAA-ES.

[3] Defendant's six co-defendants received sentences ranging from probation to 72-months imprisonment, with 72-months imprisonment being the highest sentence imposed amongst the co-defendants. (D.E. 30-1 at 22–23.) The six co-defendants have all since been released. (D.E. 30-1 at 22.)

[4] Defendant was initially offered a plea agreement for 18 years of imprisonment by the Government. (D.E. 30-1 at 36.)

[5] The Indictment specified six predicate racketeering acts alleging a pattern of racketeering activity, including conspiracy to commit murder in violation of New Jersey law. (D.E. 40 at 2.)

[6] Notably, Defendant and Louis Gatto, Sr. were acquitted of committing Racketeering Act One "by means of murder." (D.E. 30-1 at 11, 171–78; D.E. 40 at 2.)

[7] Prior to Defendant's sentencing, the U.S. Probation for the District of New Jersey prepared a Presentence Report ("PSR") that examined the predicate act of conspiracy to commit murder under the then mandatory Sentencing Guidelines and calculated Defendant's base offense level under Guideline § 2A1.1 ("First Degree Murder"). (CV D.E. 56 at 2–3.) At the time of sentencing, Defendant argued, among other things, that the Sentencing Guidelines did not apply to his criminal conduct, namely the predicate offense of conspiracy to commit murder because all such acts occurred prior to the Sentencing Reform Act. (*Id.*) Defendant argued: "If the Sentencing Guidelines did apply to his conduct . . . it would violate the Ex Post Facto Clause for Guideline § 2A1.1 ("First Degree Murder") to be applied—pursuant to Guideline § 2A1.5 of the 1992 Sentencing Guidelines—since § 2A1.5 ("Conspiracy or Solicitation to Commit Murder") was added to the Guidelines after Defendant was indicted." (*Id.*) Defendant further asserted that, instead, Guideline § 2A2.1 of the 1988 Guidelines ("Assault With Intent to Commit Murder; Conspiracy or Solicitation to Commit Murder; Attempted Murder") should be applied. (*Id.*) Judge Ackerman rejected Defendant's arguments, adopted the factual findings of the PSR and applied Guideline § 2A1.1 ("First Degree Murder") from the 1992 Sentencing Guidelines and sentenced Defendant to the statutory maximum on each count of conviction. (*Id.* at 4.)

affirmed Defendant's conviction, and the United States Supreme Court denied a petition for writ of certiorari.[8] (D.E. 40 at 2.) Subsequently, on April 21, 1997, Defendant moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (D.E. 40 at 2.) On April 17, 2000, the Court denied the motion on the merits.[9] (*Id.*) The Third Circuit affirmed, and the United States Supreme Court denied a petition for writ of certiorari in 2002.[10] (*Id.*)

After 2002, Defendant filed several post-conviction motions. In 2005, Defendant filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 in the Middle District of Pennsylvania. (*See* 1:05-CV-00852.) The petition was dismissed as being second and successive under § 2255, thus requiring leave from the Third Circuit for another petition to be filed. *See Grecco v. Williamson*, No. 05-0852, 2005 WL 1138463, at *1 (M.D. Pa. May 13, 2005). On appeal, the Third Circuit affirmed the District Court's dismissal of the petition, holding that "because the current petition would be considered a second or successive such challenge under § 2255, he must apply for permission to file another § 2255 motion with this Court." *Grecco v. Williamson*, 152 F. App'x 195 (3d Cir. 2005).

On January 13, 2006, without first obtaining permission from the Third Circuit, Defendant filed two identical motions to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 in civil actions: *Grecco v. United States*, Civ. No. 2:97-CV-02098-CCC and *Grecco v. United States*, Civ. No. 2:06-CV-00407-HAA-ES. (*See* CV D.E. 40; CV2 D.E. 1.) Defendant argued that his petition was not "second or successive," and that the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), should be applied retroactively to his case on collateral review. (*See* CV D.E. 40; CV2 D.E. 1.) On August 6, 2007, Judge Ackerman dismissed Defendant's motion to vacate, set aside, or correct his sentence in civil action 2:06-CV-00407-HAA-ES. (CV2 D.E. 18.) Likewise, on August 7, 2007, Judge Ackerman dismissed Defendant's motion to vacate, set aside, or correct his sentence in civil action 2:97-CV-02098-CCC for the same reasons. (CV D.E. 41.) The Third Circuit denied Defendant's request for appealability on March 10, 2008. (CV2 D.E. 22.)

Thereafter, on February 26, 2008, Defendant filed a Motion for Retroactive Application of Sentencing Guidelines under 18 U.S.C. § 3582(c), arguing that Amendment 591 to the United States Sentencing Guidelines, listed in USSG § 1B1.10(c) as a retroactive amendment, invalidated the process by which the District Court calculated his sentence and that he should be resentenced under a properly calculated guideline range. (*See generally* D.E. 13.) On September 29, 2008, Judge Ackerman denied the motion and the Third Circuit affirmed Judge Ackerman's denial of Defendant's § 3582(c) motion.[11] (D.E. 19, D.E. 22.) On November 18, 2013, Defendant filed a

---

[8] *See United States v. Gatto*, 995 F.2d 449 (3d Cir. 1993); *see also Grecco v. United States*, 510 U.S. 948 (1993).

[9] *See Grecco v. United States*, No. 97-2098, slip op. (D.N.J. Apr. 17, 2000).

[10] *See Grecco v. United States*, 29 F. App'x 817 (3d Cir. 2002); *see also Grecco v. United States*, 537 U.S. 880 (2002).

[11] The Third Circuit held that "the District Court correctly selected the appropriate offense guideline for the statute of conviction using the Statutory Index. Before Amendment 591, the Statutory Index "provid[ed] a listing to assist" the District Court in selecting USSG § 2E1.1 as the appropriate offense guideline for violations of RICO, 18 U.S.C. § 1962; After Amendment 591, the Statutory Index "conclusively point[ed]" to USSG § 2E1.1 as the offense guideline for Grecco's RICO conviction. The result, however, is the same, and the Amendment 591 analysis stops there.

Motion for Relief from Final Judgment Pursuant to Rule 60(b) in civil action *Grecco v. United States*, Civ. No. 2:97-CV-02098-CCC. (CV D.E. 44-1.) Defendant argued that Judge Ackerman miscalculated his offense level under the then-mandatory Sentencing Guidelines and sought to vacate his judgment and sentence. (*Id.*) On March 31, 2015, the Honorable Claire C. Cecchi, U.S.D.J., denied Defendant's motion.[12] (CV D.E. 56.) Judge Cecchi first concluded that, although Defendant's motion was brought under Rule 60(b), it was actually a successive, impermissible § 2255 petition and therefore the Court may only transfer the case to the court of appeals or dismiss it. (CV D.E. 56 at 6–11.) Second, Judge Cecchi decided to dismiss the case rather than transferring it to the court of appeals because Defendant's claim—that Judge Ackerman erred in calculating Defendant's sentence—failed on the merits. (*Id.* at 11–18.) The Court also declined to issue a Certificate of Appealability ("COA") in the event one was needed to appeal the decision. (*Id.* at 19.) Defendant then moved to alter or amend the Court's March 31, 2015 Order. The District Court denied Defendant's motion (CV D.E. 63), and the Third Circuit denied Defendant's request for a COA. (CV D.E. 64.)

Defendant is currently serving his sentence at Allenwood United States Penitentiary, Allenwood, Pennsylvania ("USP Allenwood"). (D.E. 30-1 at 11; D.E. 40 at 2.) On or about January 25, 2021, Defendant submitted a request for compassionate release to the warden. (*Id.*) The Bureau of Prisons ("BOP") denied the request on or about February 21, 2021. (D.E. 40 at 3.) Defendant exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). On July 16, 2021, Defendant filed the instant motion for reduction in sentence. (D.E. 30-1.) The Government opposed Defendant's motion on May 4, 2022 (D.E. 40), and Defendant filed a reply on June 1, 2022. (D.E. 44.) This matter was transferred to the undersigned on June 14, 2022. (*See* D.E. 45.)

**C.**

Defendant moves for compassionate release on the grounds that he meets the criteria under 18 U.S.C. § 3582(c)(1)(A) *et seq*. and Bureau of Prisons Policy Statement "BOP PS" 5050.50 § 4 *et seq*. (*See generally* D.E. 30-1.) First, Defendant asserts that he meets the criteria of 18 U.S.C. § 3582(c)(1)(A)(ii) and BOP PS 5050.50 § 4(a) because he was sentenced for an offense that occurred on or after November 1, 1987, is over the age of seventy (70) years old, has served more than thirty (30) years of his term of imprisonment, and has a minimum risk of recidivism. (D.E. 30-1 at 13.) Second, Defendant asserts that he satisfies BOP PS 5050.50 § 4(b) because is he over sixty-five (65) years old, has served more than 55.2 percent of his term of imprisonment, and suffers from serious medical conditions related to the aging process. (D.E. 30-1 at 14–19.) Finally, Defendant argues that he has established extraordinary and compelling reasons justifying a reduction in his sentence because of his rehabilitation, chronic medical conditions, and alleged disproportionate/excessive sentence. (D.E. 30-1 at 11–27.) For the reasons discussed below, this Court finds that Defendant's age, chronic medical conditions, time served, and rehabilitation, when considered together, warrant compassionate release. This Court also finds that the goals of sentencing under 18 U.S.C. § 3553(a) have been met.

---

Because Amendment 591 does not impact the District Court's subsequent application of the USSG § 2E1.1(a)(2) cross reference for "underlying racketeering activity," it has no bearing on the sentencing errors alleged in Grecco's motion and, therefore, provides no basis for a reduction in Grecco's sentence pursuant to 18 U.S.C. § 3582(c)(2)." (D.E. 22–1 at 16.)

[12] *See Grecco v. United States*, No. 97-0298, 2015 WL 1517783 (D.N.J. Mar. 31, 2015).

5

### i.
### 18 U.S.C. § 3582(c)(1)(A)(ii) and BOP PS 5050.50 § 4(a)

Defendant asserts that he meets the criteria of 18 U.S.C. § 3582(c)(1)(A)(ii) and BOP PS 5050.50 § 4(a). (D.E. 30-1 at 5.) Pursuant to 18 U.S.C. § 3582(c)(1)(A)(ii), the Court may modify a term of imprisonment if it finds that the defendant is at least seventy (70) years of age, has served at least thirty (30) years in prison for the offenses for which he is currently imprisoned, and the BOP has determined that he is no longer a danger to the safety of any other person or the community. Similarly, BOP PS 5050.50 § 4(a) provides that an inmate is eligible for a reduction in sentence where the defendant has been sentenced for an offense that occurred on or after November 1, 1987, is over seventy (70) years of age, and has served thirty (30) years or more of his term of imprisonment.

Here, the record establishes that Defendant satisfies the criteria of both 18 U.S.C. § 3582(c)(1)(A)(ii) and BOP PS 5050.50 § 4(a). Defendant was charged in a seven-count indictment after November 1, 1987, is seventy-eight years old, and has served thirty-three (33) years of his sixty-five (65) year term of imprisonment. (D.E. 30-1 at 13.) The BOP has determined that Defendant's risk of recidivism is low based upon, *inter alia*, Defendant's advanced age, offense conduct, incident reports, prior criminal history, and completion of rehabilitation programs. (D.E. 30-1 at 155–56.) During his time in prison, Defendant has made several rehabilitative efforts, including completion of several BOP rehabilitative programs and maintaining employment with the BOP Recreation Department for over 20 years. (D.E. 30-1 at 84–88, 114, 163–68.) Defendant has been identified by BOP staff as "hardworking and very respectful" and "always [having] a positive outlook on things." (D.E. 30-1 at 113, 116.) Significantly, several BOP staff, family members, and community members have submitted letters advising as to Defendant's positive character and impact. (*See generally* D.E. 30-1 at 89–105, 108–13, 116–50.) Based on the foregoing, this Court finds that Defendant is not a danger to the safety of any others or to the community and that a reduction of his sentence is consistent with the policy statements set forth in 18 U.S.C. § 3582(c)(1)(A)(ii) and BOP PS 5050.50 § 4(a).

### ii.
### BOP PS 5050.50 § 4(b)

Defendant asserts that he satisfies BOP PS 5050.50 § 4(b). (D.E. 30-1 at 6–11.) Pursuant to BOP PS 5050.50 § 4(b), an inmate is eligible for a reduction in sentence where the inmate is sixty-five (65) years or older, suffers from chronic or serious medical conditions related to the aging process, experiences deteriorating mental or physical health that substantially diminishes his ability to function in a correctional facility, has no promise of substantial improvement through conventional treatment, and has served at least 50 percent of his sentence.

The record establishes that Defendant satisfies the criteria of BOP PS 5050.50 § 4(b). Defendant is seventy-eight years old and has served at least 50 percent of his term of imprisonment. (D.E. 30-1 at 14–19.) Defendant suffers from serious chronic medical conditions, including, but not limited to, stroke, chronic kidney disease, benign prostatic hyperplasia, hyperlipemia, nuclear sclerosis, degenerative disc disease, and hypertension. (D.E. 30-1 at 14–17.) The BOP has noted that Defendant's health is "unstable" and requires "complex chronic care." (D.E. 30-1 at 82.)

Defendant's health has been declining as he advances in age, requiring outside medical care and treatment. (D.E. 30-1 at 17–18.) This Court is satisfied that Defendant's serious chronic medical conditions substantially diminish his ability to provide self-care within the environment of a correctional facility and conventional treatment promises no substantial improvement to his medical conditions. Furthermore, the most effective way to deliver medical care to Defendant is outside of USP Allenwood where he can receive needed care and monitoring.

Moreover, Defendant's chronic kidney disease, stroke, hypertension, and advanced age place him at a uniquely high risk of grave illness or death if infected by COVID-19, according to the Center for Disease Control and Prevention ("CDC").[13] *See* CDC, *People with Certain Medical Conditions* (last updated Sept. 2, 2022), *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html*. Courts have found that a defendant's chronic kidney disease, stroke, and hypertension, coupled with other factors, establish extraordinary and compelling reasons justifying early release under 18 U.S.C. § 3582(c)(1)(A)(i). *See e.g., United States v. Khair*, Crim. No. 15-404, 2020 WL 6689757, at *3 (D.N.J. Nov. 13, 2020) (stating that Defendant's chronic kidney disease places him "at a higher risk of severe COVID-19 complications," and therefore constitutes an extraordinary and compelling reason for a sentence reduction); *United States v. Davidson*, Crim. No. 16-00139, 2020 WL 4877255, at *19 (W.D. Pa. Aug. 20, 2020) (Defendant's chronic kidney disease, diabetes, and hypertension qualified as a compelling and extraordinary reason justifying early release, in part, because of his "compounded and progressive nature"); *United States v. Babbitt*, 496 F. Supp. 3d 903, 905 (E.D. Pa. 2020) (granting compassionate release where a sixty-six-year-old defendant suffered from, among other things, a stroke that caused memory loss, hypertension, and hyperlipidemia). Furthermore, Defendant's advanced age places him at the "highest risk of getting very sick from COVID-19 because more than 81% of COVID-19 deaths occur in people over 65." *See* CDC, *People with Certain Medical Conditions* (last updated Sept. 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Given Defendant's advanced age, completion of at least 50 percent of his term of imprisonment, serious chronic medical conditions, and declining health, this Court finds that a reduction of his sentence is consistent with the policy statement set forth in BOP PS 5050.50 § 4(b).[14]

### iii.
### 18 U.S.C. § 3553(a) Sentencing Factors

This Court also finds that releasing Defendant would be consistent with the sentencing factors under 18 U.S.C. § 3553(a) because those factors militate strongly in his favor. The nature and circumstances of Defendant's offense are undoubtedly serious, and that one factor could conceivably weigh against granting compassionate release. *See* U.S.C. § 3553(a)(1). However,

---

[13] Defendant has received the COVID-19 vaccination.

[14] For the same reasons set forth herein regarding Defendant's advanced age, time served, chronic medical conditions, and rehabilitation, Defendant has established extraordinary and compelling reasons justifying his release under 18 U.S.C. § 3582(c)(1)(A)(i). Because Defendant has established extraordinary and compelling reasons justifying his release, this Court declines to address, in detail, Defendant's argument that he received a disproportionate/excessive punishment for the offenses committed.

early release at this point under the circumstances of Defendant's case would be consistent with the other § 3553(a) factors and outweighs the seriousness-of-offense factor. An individualized review of all the circumstances of Defendant's case establishes that early release is warranted.

First, Defendant has served thirty-three (33) years of his sixty-five (65) year term of imprisonment, which is at least 50 percent of his custodial sentence. (D.E. 30-1 at 79.) It is indisputable that Defendant's sentence is extraordinarily long in comparison to the significantly shorter sentences that his co-defendants, who decided not to proceed to trial, received for substantially similar conduct. (D.E. 30-1 at 22–23.) The highest sentence received among Defendant's co-defendants who decided not to proceed to trial was 72-months imprisonment. (*Id.*) Defendant's six co-defendants have all been released years ago. (*Id.*) Notably, the Government's plea offer to Defendant prior to trial was eighteen (18) years imprisonment, which would have resulted in his release from prison decades ago. (D.E. 30-1 at 36.) This suggests that the Government was open to the idea of Defendant being released from prison after eighteen (18) years and there is no indication that the Defendant would be more dangerous now than he was then. This Court is keenly aware of the considerations associated with acceptance of responsibility and entering a plea of guilty as it relates to sentencing. Notwithstanding, this Court finds that Defendant's thirty-three (33) years of imprisonment is a sufficient but not greater than necessary term of imprisonment that will certainly deter him and others from committing crimes. (D.E. 30-1 at 79.) Likewise, early release at Defendant's advanced age coupled with his thirty-three (33) years of imprisonment, will not create any unwarranted disparities in sentencing among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

Second, the risk of recidivism is minimal for Defendant who is seventy-eight years old, suffers from serious chronic medical conditions, and has served thirty-three (33) years of imprisonment. (*See generally* D.E. 30-1; *see also* D.E. 30-1 at 155–56); *see also* U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (2004) ("Recidivism rates decline relatively consistently as age increases."). As discussed above, the Government's initial plea offer of eighteen (18) years imprisonment further reflects the minimum risk of recidivism. (D.E. 30-1 at 36.) The BOP has already determined that the risk of recidivism associated with Defendant's release is "mini[mal]" based upon a combination of factors including Defendant's age, offense conduct, criminal history, lack of incident reports, and completion of rehabilitative programming. (D.E. 30-1 at 155–56.) Defendant arguably has moved beyond his criminal past and does not appear to have presented any disciplinary or safety problems while incarcerated. Accordingly, Defendant is unlikely to reoffend if released, and is not a danger to the safety of others or to the community.

Third, while incarcerated, Defendant has undertaken a number of steps to improve himself. (D.E. 30-1 at D.E. 30-1 at 84–88, 113–14, 116, 163–68.) Defendant has demonstrated an extensive record of rehabilitation by completing BOP rehabilitative programs, maintaining employment at the BOP, establishing an exemplary reputation in the BOP community, showing remorse for his actions, and maintaining close family relationships. (*Id.*) The numerous letters submitted by BOP staff, family members, and community members in support of Defendant's early release weigh strongly in his favor. (*See generally* D.E. 30-1 at 89–105, 108–13, 116–50.) Defendant's family has represented that they are committed and personally invested in ensuring that his return home is successful. (*Id.*)

For the foregoing reasons, Defendant's advanced age, chronic medical conditions, time served, minimum risk of recidivism, and rehabilitation, in combination, warrant a reduction in his sentence. A reduced sentence here would reflect "the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Indeed, the goals of sentencing under 18 U.S.C. § 3553(a) have been met.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Reduction in Sentence is **GRANTED**. There being a verified residence and an appropriate release plan in place, as confirmed by U.S. Probation for the District of New Jersey, this order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure the Defendant's safe release. The Defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the Defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the Defendant's safe release, then the parties shall immediately notify the Court and show cause why the stay should be extended. In sum, Defendant's sentence is hereby reduced to time served with a one-year term of supervised release to follow. Defendant is required to adhere to the directives of Probation. An appropriate order follows.

                                                                                           /s/ Susan D. Wigenton
                                                                                       **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties